# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

DOUGLASS L. REED,   :

            Plaintiff,

  -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,
            Defendant.   :

Case No. 3:08-cv-208

District Judge Walter Herbert Rice
Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence

is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy. 42 U.S.C. §423(d)(2).

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520 . First, if the claimant is currently engaged in substantial

gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1. If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed an application for SSD on May 8, 2003, alleging disability from January 1, 2003, due to a neck and lower back injury, severe injury to his left hand, and depression. (Tr. 43-45, 63, 87). Plaintiff's application was denied initially and on reconsideration. (Tr. 34-42). A hearing was held before Administrative Law Judge Melvin A. Padilla, (Tr. 465-509), who determined that Plaintiff is not disabled. (Tr. 12-26). The Appeals Counsel denied Plaintiff's request for review, (Tr. 6-9), and Judge Padilla's decision became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge Padilla found that Plaintiff met the insured status requirements of the Act through December, 2007. (Tr. 15, ¶ 1). Judge Padilla also found that Plaintiff has severe residuals of left, non-dominant hand injury, residuals of remote

3

cervical spine surgery, depression with anxiety features, and polysubstance abuse, (Tr. 15, ¶ 3), but that he does not have an impairment or combination of impairments that meets or equals the Listings. (Tr. 19, ¶ 4). Judge Padilla also found that Plaintiff has the residual functional capacity to perform a reduced range of light work. *Id.* ¶ 5. Judge Padilla then used sections 202.13 through 202.15 of the Grid as a framework for deciding, coupled with a vocational expert's (VE) testimony, and concluded that there is a significant number of jobs in the economy that Plaintiff is capable of performing. (Tr. 25 ¶ 10). Judge Padilla concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. (Tr. 26).

Plaintiff has a history of sustaining a right shoulder injury in 1997. (Tr. 108-12). In1998, Plaintiff underwent a C6-7 anterior cervical diskectomy with cadaver dowel fusion for treatment of a C6-7 herniated nucleus pulposus. (Tr.113- 22).

Plaintiff received treatment from physical medicine and rehabilitation specialist Dr. Duritsch during the period August, 1997, to September 3, 1999. (Tr. 138-53). Dr. Duritsch treated Plaintiff for his post-cervical diskectomy subjective symptoms, right shoulder girdle pain, and low back pain. *Id.* On September 3, 1999, Dr. Duritsch noted that Plaintiff's cervical range of motion was normal with respect to flexion, but that extension lacked the last ten degrees, that there was trace tenderness in the right upper trapezium, and that there was trace tenderness in the bilateral lumbar paraspinals. *Id.*

Examining physician Dr. Chavez reported on December 9, 1999, that Plaintiff's neurological examination was normal, there were no muscle spasms, that Plaintiff was able to walk on his heels and toes, and that he could squat down. (Tr. 154-55). Dr. Chavez also reported that with respect to his right shoulder, Plaintiff had some complaints of discomfort with pressure

4

anteriorly, there was some degree of crepitance with range of motion, and that there was full range of motion. *Id.*

On January 1, 2003, Plaintiff injured his left hand while using a table saw and he was treated in the emergency room for multiple lacerations to his hand. (Tr. 163-74). The emergency physician noted an "obvious flexor deformity of the distal index finger." *Id.* Dr. Ebert performed multiple surgical procedures on Plaintiff's major injuries to his left index through small fingers. (Tr. 175-86). Plaintiff subsequently saw Dr. Ebert for post-surgical treatments twice a week for dressing changes and evaluation. (Tr. 194-98). Plaintiff also had physical/occupational therapy through March, 2003. (Tr. 276-303).

On March 21, 2003, Dr. Ebert reported that Plaintiff could return to work, but should avoid repetitive or forceful grasping with his left hand. (Tr. 192). Dr. Ebert reported on May 7, 2003, that Plaintiff could certainly be employed, but had a permanent partial disability to his left hand. (Tr. 187-90). Dr. Ebert noted Plaintiff had digit-threatening injuries to the index, long, and small fingers and that long-term rehabilitation was expected to take six to twelve months. *Id.* Dr. Ebert essentially noted that Plaintiff had tenderness, stiffness, decreased sensation, and decreased grip strength. *Id.* Dr. Ebert opined that Plaintiff was at high risk for compromised circulation and should take life-long precautions for both re-warming and preventative glove wearing. *Id.*

Examining psychologist Dr. McIntosh noted on November 30, 2003, that Plaintiff reported he felt like giving up, was socially withdrawn, easily frustrated, irritable, and impatient. (Tr. 217-21). Dr. McIntosh also noted that Plaintiff had a sad affect, his mood was moderately depressed, he had a poor appetite and sleep difficulties, that he had reported some recent suicidal ideation but no attempts, and that he enjoyed nothing and did not like leaving his home. *Id.* Dr.

McIntosh reported that Plaintiff appeared to be mildly tense and that he was noted to be a little impulsive. *Id.* Dr. McIntosh identified Plaintiff's diagnoses as major depression, recurrent, and moderate, and psychological factors affecting pain perception and he assigned Plaintiff a GAF of 48. *Id.* Dr. McIntosh opined that Plaintiff's ability to understand, remember, and carry out one or two-step job instructions was mildly to moderately impaired, his ability to interact with others was moderately impaired, his ability to withstand the stress and pressure of work was poor, and that his ability to maintain concentration and attention for simple, repetitive tasks was poor. *Id.*

The record contains a copy of Plaintiff's treatment notes from the Veterans Administration health care facility (VA) dated November, 2004, to January, 2006. (Tr. 355-93; 402-56)[1]. Those records reveal that Plaintiff underwent a pain evaluation at which time his primary complaints included pain in his hand, neck, legs, back, and hip. *Id.* Plaintiff's examination revealed compromised left hand motor strength at 3/5. *Id.*

Ms. Wright, a psychology resident at the VA, and Dr. Verdaguer, a clinical psychologist, evaluated Plaintiff on June 16, 2005. *Id.* They noted that Plaintiff complained of anhedonia, decreased appetite, sleep difficulties and, feelings of hopelessness and irritability, that he had a restricted affect, that his judgment and insight were fair, and that he appeared disheveled and irritable. *Id.* Ms. Wright and Dr. Verdaguer identified Plaintiff's diagnosis as major depressive disorder associated with both psychological factors and a general medical condition. *Id.* They reported that Plaintiff had reported multiple symptoms of depression, along with rumination and

---

[1] Although Plaintiff's VA records reflect an initial entry date of November 8, 2004, that clinical note is one from the urgent care clinic at the VA reflecting that Plaintiff requested pain medication for his alleged back pain and a statement that he could not work. (Tr. 388-92). Plaintiff's next visit to the VA was on May 25, 2005. (Tr. 383-87). Accordingly, the record essentially contains no medical evidence which concerns the period November, 2003, to May, 2005.

worry, which appeared to stem from physical pain and financial situation and that his mood seemed depressed to the point that he was unable to engage in active coping processes. *Id.*

Plaintiff was hospitalized June 18 - 22, 2005, after he attempted to commit suicide. (Tr. 317-54). At the time of his admission, it was noted that Plaintiff had consumed a large amount of alcohol and that his girlfriend found him in his garage unconscious and hanging from a belt. *Id.* It was also noted that Plaintiff had been drinking on a regular basis for the past six months, that he had a depressed mood, and that his affect was mildly dysphoric and constricted. *Id.* Plaintiff was diagnosed with major depressive disorder, alcohol dependence with physical dependence, and he was assigned a GAF of 35. *Id.* Plaintiff was treated with therapy and medications and discharged. *Id.*

On July 8, 2005, Plaintiff was evaluated by psychiatrist Dr. Walters at the VA facility. (Tr. 363-64; 371-72). Dr. Walters reported that Plaintiff had a flat affect, depressed mood with impaired judgment/insight and he opined that Plaintiff could not work "due to medical problems." (Tr. 393). Plaintiff continued to treat with Dr. Walters who diagnosed Plaintiff with major depressive disorder. (Tr. 451-56).

On September 19, 2005, examining psychologist, Dr. Boerger reported Plaintiff was depressed with decreased energy, decreased appetite, no interest in activities, that he had sleep irregularities, anxiety, and that he had some suicidal ideation. (Tr. 394-401). Dr. Boerger also reported that Plaintiff admitted that he was still drinking alcohol but was trying to stop, that he had consumed only a six-pack of beer in the past two weeks, that he used marijuana and cocaine "when he was younger", and that he did go out on the street from time to time to get pain medications "if he needs them and if he can afford them". *Id.* Dr. Boerger noted Plaintiff appeared depressed and

7

irritable, that he did not cry, and that he had quite a bit of trouble with anger. *Id.* Dr. Boerger noted further that Plaintiff appeared to be appropriately preoccupied with his physical condition, was alert and oriented, appeared to be aware of his need for treatment, and that he displayed symptoms of depression and anxiety. *Id.* Dr. Boerger identified Plaintiff's diagnoses as major depressive disorder, severe and without psychotic features, and anxiety disorder NOS, and he assigned Plaintiff a GAF of 49. *Id.* Dr. Boerger opined Plaintiff's ability to relate to others and withstand the stress and pressure of regular work activity were moderately to markedly impaired, and that his ability to understand and follow instructions was mildly to moderately impaired. *Id.* Dr. Boerger concluded Plaintiff needed ongoing psychiatric treatment. *Id.* Dr. Boerger also opined that Plaintiff's alcohol use did not contribute to his functional limitations because Plaintiff's recent alcohol use was minimal. (Tr. 401).

On January 3, 200[6], Dr. Walters reported Plaintiff's abilities to perform work-related mental activities were moderately-severely to severely impaired. (Tr. 441-50). Dr. Walters also opined that Plaintiff's diagnosis was major depressive disorder, his prognosis was poor, and that he was permanently and totally disabled. *Id.*

In his Statement of Errors, Plaintiff alleges that the Commissioner erred by rejecting treating psychiatrist, Dr. Walters' opinion and by failing to find that his allegations of disabling pain were entirely credible. (Doc. 8).

In general, the opinions of treating physicians are entitled to controlling weight. *Cruse v. Commissioner of Social Security*, 502 F.3d 532, 540 (6th Cir. 2007), *citing, Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997) (citing 20 C.F.R. § 404.1527(d)(2) (1997)). In other words, greater deference is generally given to the opinions of

treating physicians than to those of non-treating physicians. *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 242, (6th Cir. 2007), citing *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544 (6th Cir. 2004). "A physician qualifies as a treating source if the claimant sees her 'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition.'" *Cruse,* 502 F.3d at 540 (alteration in original) (quoting 20 C.F.R. § 404.1502). However, a treating physician's statement that a claimant is disabled is of course not determinative of the ultimate issue. *Landsaw v. Secretary of Health and Human Services,* 803 F.2d 211, 213 (6th Cir. 1986). A treating physician's opinion is to be given controlling weight if it is well supported by medically acceptable clinical and laboratory techniques and it is not inconsistent with the other substantial evidence in the record. *Cutlip v. Secretary of Health and Human Services,* 25 F.3d 284 (6th Cir. 1994).

The reason for the "treating physician rule" is clear: the treating physician has had a greater opportunity to examine and observe the patient. *See, Walker v. Secretary of Health and Human Services,* 980 F.2d 1066, 1070 (6th Cir. 1992). Further, as a result of his or her duty to cure the patient, the treating physician is generally more familiar with the patient's condition than are other physicians. *Id.* (citation omitted).

While it is true that a treating physician's opinion is to be given greater weight than that of either a one-time examining physician or a non-examining medical advisor, that is only appropriate if the treating physician supplies sufficient medical data to substantiate that opinion. *See, Kirk v. Secretary of Health and Human Services,* 667 F.2d 524 (6th Cir. 1981), *cert. denied,* 461 U.S. 957 (1983); *see also, Bogle v. Sullivan,* 998 F.2d 342 (6th Cir. 1993). A treating physician's broad conclusory formulations regarding the ultimate issue of disability, which must be decided by

the Commissioner, are not determinative of the question of whether an individual is under a disability. *Id.* Further, the Commissioner may properly reject a treating physician's opinion if it is not supported by sufficient medical data or if it is inconsistent with the other evidence of record. *Cf., Kirk, supra; see also, Walters, supra.*

Judge Padilla rejected Dr. Walters' opinion that Plaintiff is totally disabled on the basis that Dr. Walters failed to provide an adequate basis for that opinion. (Tr. 22).

First, it is questionable as to whether Dr. Walters qualifies as a "treating physician" for purposes of the Act in view of the fact that he had seen Plaintiff on about only three occasions before he offered his January, 2006, opinion. Nevertheless, the Commissioner had an adequate basis for rejecting Dr. Walters' opinion.

Dr. Walters offered no objective findings to support his opinion and his office notes do not support his opinion. For example, when Plaintiff first saw Dr. Walters in July, 2005, Dr. Walters continued the medication that had been prescribed for Plaintiff while he hospitalized in June, 2005. However, prior to June, 2005, Plaintiff had not been taking any psychotrophic medication. Dr. Walters did not discuss or describe Plaintiff's condition and only provided a diagnosis of major depressive disorder stating that Plaintiff's prognosis was "poor" and expected to last 12 months or longer. Of course, the presence of a diagnosis alone is never conclusive evidence of disability. *See, Young v. Secretary of Department of Health and Human Services,* 925 F.2d 146 (6th Cir. 1990). The mere diagnosis of an impairment does not indicate the severity of the condition nor the limitations, if any, that it imposes. *Id.* Dr. Walters provided no in-depth analysis nor did he perform any tests.

Contrary to Plaintiff's argument, Dr. McIntosh's and Dr. Boerger's opinions do not

support Dr. Walters's opinion because the Commissioner had adequate bases for rejecting those opinions. First, Dr. McIntosh's report is essentially a recitation of Plaintiff's subjective complaints. Those objective findings that Dr. McIntosh did report were, at worst, mild. For example, although Dr. McIntosh reported that Plaintiff maintained a sad affect and was moderately depressed, Dr. McIntosh also reported that Plaintiff appeared to be only "mildly tense", was oriented, had no lapses in alertness or periods of mental confusion, and had a fairly good memory. In addition, Dr. McIntosh reported that Plaintiff's speech was normal, he had no flight of ideas, incoherence, or looseness of associations, his thought processes were not tangential nor circumstantial, and that his judgment seemed to be "a little impulsive". Those clinical findings are inconsistent with the degree of impairment Dr. McIntosh described or with a GAF of 48 which reflects a serious impairment. Similarly, Dr. Boerger's report reflected primarily Plaintiff's subjective complaints and allegations. However, those objective findings that Dr. Boerger did report were inconsistent with marked impairments or a GAF of 49. For example, Dr. Boerger reported that Plaintiff was alert and oriented, performed serial sevens without error, had mild difficulty with recall of dates and times in his history, displayed some irritability, and that Plaintiff exhibited no evidence of delusions or hallucinations. In contrast, the reviewing mental health experts reported that Plaintiff is, at worst, moderately impaired. (Tr. 199-211, 227-44).

Under these facts, the Commissioner did not err by rejecting Dr. Walters' opinion that Plaintiff is disabled.

Plaintiff argues next that the Commissioner erred by rejecting his subjective complaints with respect to his left hand impairment.

It is, of course, for the ALJ, and not the reviewing court, to evaluate the credibility

11

of witnesses, including that of the claimant. *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 247 (6th Cir. 2007)(citations omitted). An administrative law judge's credibility findings are entitled to considerable deference and should not be lightly discarded. *See, Villarreal v. Secretary of Health and Human Services,* 818 F.2d 461 (6th Cir. 1987); *Casey v. Secretary of Health and Human Services,* 987 F.2d 1230 (6th Cir. 1993). Determination of credibility related to subjective complaints rests with the ALJ and the ALJ's opportunity to observe the demeanor of the claimant is invaluable and should not be discarded lightly. *Gaffney v. Bowen,* 825 F.2d 98 (6th Cir. 1987).

However, the ALJ is not free to make credibility determinations based solely upon an "intangible or intuitive notion about an individual's credibility." *Rogers, supra* (citation omitted). Rather, such determination must find support in the record. *Id.* Whenever a claimant's complaints regarding symptoms or their intensity and persistence are not supported by objective medical evidence, the ALJ must make a determination of the credibility of the claimant in connection with his or her complaints "based on a consideration of the entire case record." *Id.* The entire case record includes any medical signs and lab findings, the claimant's own complaints of symptoms, any information provided by the treating physicians and others, as well as any other relevant evidence contained in the record. *Id.* Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant while inconsistency, although not necessarily defeating, should have the opposite effect. *Id.*

In determining that Plaintiff is capable of performing a limited range of light work, Judge Padilla relied on, *inter alia*, Dr. Ebert's assessment that Plaintiff could return to full duty work as of March 21, 2003, except for no repetitive or forceful grasping with the left hand. (Tr. 19). Indeed, as noted above, Dr. Ebert opined in March, 2003, that Plaintiff could return to work although

12

he should avoid repetitive or forceful grasping with his left hand and in May, 2003, Dr. Ebert reported that Plaintiff could "certainly be employed" although he had a partial disability of his left hand. As Judge Padilla noted, there is no evidence that Plaintiff followed up for any further care for his left hand or even had any complaints related to his hand. Further, as the Court has noted, there is a virtual absence of any medical evidence for the period November, 2003, to May, 2005. Under these facts, that is, in light as the virtual lack of medical evidence to support them, the Commissioner did not err by rejecting Plaintiff's subjective complaints as to his left hand impairment.

Our duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939). The Commissioner's decision in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to benefits under the Act be affirmed.

April 9, 2009.

s/ Michael R. Merz<br>
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).